*Spec. e*



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable Ray Winder
County Attorney
Cooke County
Gainesville, Texas

Dear Sir:

Opinion No. 0-6282
Re: Under the facts submit-
ted, ad valorem taxes
paid are not subject to
refund.

Your letter of February 1, 1945, addressed to this
office, reads as follows:

"110½ acres of land out of the W. M. Birdwell
Survey, Abstract 1740, Cert. S. F. 6925 was pur-
chased from the State and was owned by Henry P.
Clack on July 30, 1941, at which time the land was
forfeited to the State for non-payment of interest.

"Henry P. Clack continued to live upon, en-
joy and appropriated to his own use all revenues
from said land, including the revenue from an oil
and gas lease executed by him thereon, at all times
subsequent to such forfeiture, and effective Oc-
tober 27, 1944 the sale of this land was re-instat-
ed in said Henry P. Clack. The records in the
General Land Office may show this land as the W.M.
Virdell Survey, and the name of the original grantee
as Marie Goodner.

"The land owner, Henry P. Clack, has made
claim to Cooke County for refund of ad valorem
taxes for the period 1941 to 1944, both inclusive.
Mr. Clack is in receipt of a letter from the Com-
missioner of the General Land Office, quoting an
Attorney General's opinion number 0-1832 directed
to Hon. George H. Sheppard, which states in ef-
fect that since the law covering forfeiture and
re-instatement does not provide for payment of
taxes between date of forfeiture and date of re-
instatement, and since ** the purchaser had no

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Ray Winder, page 2

right to possession and no right to receive any
of the revenues from same, ** he is not liable for
payment of local ad valorem taxes from the date of
the forfeiture to the date of the re-instatement.

"I have advised the local Tax Collector that
it is my opinion that local ad valorem taxes are
properly chargeable against this land during the
period of forfeiture for the reason that the owner
occupied and used and appropriated the revenues
and had full enjoyment of it during that period,
and in all events that he would not be entitled to
a refund for the year 1941, since the land was not
forfeited on January 1, 1941, the date when prop-
erty is subject to taxation. I find no authorities
on the subject and would, therefore, appreciate
your opinion in the matter."

Since we are of the opinion that the law does not
authorize a refund of the taxes paid as above stated, even if
they were wrongfully paid, we do not find it necessary to pass
upon the question of whether the taxpayer actually owed the
taxes; but, for the purposes of this opinion, we will assume
that the taxes were not owed.

In the case of City of Houston vs. Feizer, 13 S.W.
266, our Supreme Court said:

"That a tax voluntarily paid cannot be re-
covered, though it had not the semblance of legal-
ity, is well settled; and, as said by an element-
ary writer, 'every man is supposed to know the
law, and if he voluntarily makes a payment which
the law would not compel him to make, he cannot
afterwards assign his ignorance of the law as the
reason why the State should furnish him with legal
remedies to recover it back.'"

Both the above case and another early Texas Supreme
Court case, Galveston County vs. Gorham, 49 Tex. 279, seem to
make a distinction between a payment under a mistake of law
and a payment under a mistake of fact, allowing recovery of
a refund of the tax in the latter case, but not in the former.

Honorable Ray Winder, page 3

This office, in Opinions Nos. 0-1266 and 0-1749, has recognized the same distinction in reliance upon said decisions. See also, 61 C.J. 991, and 51 Am. Jur. 1023.

Recent decisions on the subject by our Supreme Court disclose little concern over whether the tax was paid under a mistake of fact or of law, but appear to be based upon whether or not the tax was paid under duress. Judge Critz, in the case of National Biscuit Company vs. State, 135 S.W. (2d) 687, lays down the following rules:

"1. That a person who pays an illegal tax voluntarily, that is, without duress, has no valid claim for its repayment; but that a person who pays such tax under duress does have a valid claim for its repayment. 2. That duress in the payment of an illegal tax may be either express or implied, and the legal liability to repay or refund is the same in both instances."

To the same effect, see Metropolitan Life Insurance Company vs. Mann, 168 S.W. (2d) 212; Union Central Life Insurance Company vs. Mann, 158 S.W. (2d) 477; and, Austin National Bank vs. Sheppard, 71 S.W. (2d) 242.

In the National Biscuit Company case, supra, the Secretary of State, because of a misinterpretation of the law on his part, demanded an illegal tax which plaintiff paid under protest. In the Austin National Bank case, supra, taxes were paid under a statute later declared unconstitutional. In the two Insurance Company cases above mentioned, it appears that the companies each paid more taxes than they owed. The cause for such overpayment does not appear in the court's opinion. In the Bank case and in the Biscuit Company case, a failure to pay such tax would have caused plaintiff to incur the risk of having its right to do business in the State forfeited. In the two Insurance Company cases, above mentioned, plaintiff, by failing to pay the tax, would have incurred the further risk of losing its right to sue or defend in the courts, in addition to the risk of having its right to do business forfeited. The courts held that payment in each of the four cases was made under duress and hence subject to refund.

Honorable Ray Winder, page 4

In Galveston City Company vs. Galveston, 56 Tex. 486, 492, Chief Justice Stayton, after holding that a tax voluntarily paid could not be recovered, stated:

"In determining whether the money was voluntarily paid or not, an inquiry must be made into the intention of the parties at the time the money was paid; and <u>unless it appears that, at that time, there was an unwillingness to pay, the payment must be held to have been voluntarily made</u>. . . ."

To the same effect, see Moller vs. City of Galveston, 57 S.W. 1116, error refused. See also, 61 C.J. 985.

The case of Frost vs. Fowlerton, 111 S.W. (2d) 754 (Civ. App.), while recognizing the general rule denying recovery of a tax voluntarily paid, sets forth what appears to be a commonly recognized exception to the rule, namely, that a tax erroneously paid on property located outside the taxing district may be recovered, citing 61 C.J. 985.

Apparently, the opinion in Davie's Executors vs. City of Galveston, 41 S.W. 145 (Civ. App.), comes close to announcing the true rule when it states:

"The better doctrine seems to be, . . . recognized in several late decisions by the Supreme Court of this State . . . that when there is neither mistake nor fraud to entitle one to recover back taxes, which he was under no obligation to pay, the payment must be compulsory."

As we analyze the authorities, a recovery of taxes wrongfully paid is to be allowed in the following types of cases: (1) fraud; (2) mistake of fact; and, (3) duress. We will now consider whether payment of the taxes inquired about was made in such a manner as to come within the meaning of any of the above three categories.

There is nothing in your letter or in the facts developed from our own investigation that would reveal the

Honorable Ray Winder, page 5

existence of any fraud practiced on the taxpayer. Records in the General Land Office indicate that over ten years elapsed from the time Mr. Clack became delinquent on his interest payments to the time the land was forfeited to the State. Notice of the forfeiture was mailed to his last known address and returned unclaimed, and presumably Mr. Clack continued to use the land and voluntarily to pay taxes thereon, not knowing that he was no longer the owner.

Were the taxes paid under a mistake of fact? It is probably true that Mr. Clack had no actual knowledge of the forfeiture at the time it occurred, and during the time he paid the taxes in dispute. Nevertheless, he did know that he was many years delinquent on his interest payments, and he was charged with knowledge of the law authorizing the Land Commissioner to forfeit the land to the State because of such delinquency. (Article 5326, R.S.) The records of the Land Office were available to Mr. Clack, and by checking such records, he could have learned of the forfeiture, by virtue of which he ceased to be owner of the land.

In City of Houston vs. Feizer, supra, the Supreme Court said:

"Mistake of fact can scarcely exist in such a case, except in connection with negligence; as the illegalities which render such a demand a nullity must appear from the records, and <u>the taxpayer is just as much bound to inform himself what the records show or do not show as are the public authorities.</u> The rule of law is a rule of sound public policy also."

And 61 C.J. 991 states:

"Taxes paid under a mistake of fact are recoverable, particularly if made by the revenue officers in the form of a statement to the taxpayer or in taking some official action on the correctness of which the latter has a right to rely, although <u>it is otherwise where the mistake is made by the taxpayer himself, and is the result of his neglect of some legal duty, or where the facts</u>

Honorable Ray Winder, page 6

>    which would have shown the mistake were within
>    his own possession or within his reach."

Accordingly, since the facts were available to the taxpayer through the public records, we hold that this case contains no "mistake of fact" of such a nature as to come within the second of the three categories above mentioned. The taxpayer being legally charged with knowledge of the facts revealed by the public records, the mistake here becomes one of law and not of fact.

Was there duress here? We assume, for purposes of this opinion, that no state or county tax lien foreclosure occurred for the years in question, and that the property was not about to be sold for taxes at the time Mr. Clack paid them. We assume that the taxes were paid as they currently accrued. Article 7336, Revised Statutes, levies a penalty up to 8% on taxes delinquent six months or more and provides for 6% per annum interest on the delinquent taxes. It is our opinion that such penalties are not of sufficient severity to constitute duress within the meaning given to such term in the cited cases.

In the case of City of San Antonio vs. Grayburg Oil Company, 259 S.W. 985 (Civ. App.), the city refused to accept the oil company's check for its entire tax bill unless a small additional tax, not legally owed, was included in the payment. The oil company paid the added amount in order to avoid the risk of being delinquent on all its taxes, and incurring penalties which would have exceeded the amount of the disputed item in a few months. The court held the payment made under duress.

In Galveston County vs. Galveston Gas Company, 54 Tex. 287, on subsequent appeal, 10 S.W. 583, plaintiff's property had been levied on and advertised for sale for taxes, and the court held that tax payment to avoid the sale was under duress.

It will be recalled that the recent Supreme Court decisions referred to in the first part of this opinion all deal with severe penalties, including forfeiture of the right to do business in the State and the deprivation of the right

to sue and defend in the courts. We find no case holding that the risk of becoming delinquent on an ad valorem tax is sufficient to constitute duress. We hold that there was no duress here, and that the tax was voluntarily paid.

In City of Fort Worth vs. Southwestern Bell Telephone Company, 80 Fed. (2d) 972, Circuit Judge Sibley, referring to tax refund claims, states:

"The practice in Texas apparently is to be liberal with injunctions before payment but opposed to recoveries afterwards."

And it is said in 51 Am. Jur. 1005 that:

"On grounds of public policy, the law discourages suits for the purpose of recovering back taxes alleged to be illegally levied and collected."

It is the opinion of this department that the taxes in question may not be refunded.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

J. Arthur Sandlin
Assistant

APPROVED
ATTORNEY GENERAL OF TEXAS

JAS:db


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN